UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALFONZO WELLS, JR.

                    Plaintiff,

      v.                                        Case No. 20-cv-1557-pp

C.O. KOSKI, SGT HESTHEAVEN,
and SGT MORRIS,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTIONS FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NOS. 8, 11, 13, 15, 17), DENYING PLAINTIFF'S REQUESTS FOR RECRUITMENT OF COUNSEL (DKT. NOS. 10, 14, 16) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Alfonzo Wells, Jr., who previously was incarcerated at the Racine County Jail and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants forced him to stay inside a cell flooded with sewage water for nine hours. The plaintiff filed his complaint on October 5, 2020, but he filed it in the U.S. District Court for the Northern District of Illinois. Dkt. No. 1. On October 8, 2020, District Judge Manish S. Shah transferred the complaint to this court because the events alleged in the complaint took place in Wisconsin. Dkt. Nos. 3, 4. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. nos. 8, 11, 13, 15, 17, and to appoint counsel, dkt. nos. 10, 14, 16, and screens the complaint, dkt. no. 27.

1

## I.  Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 8, 11, 13, 15, 17)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets courts allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

By the time the plaintiff filed the complaint in this case, he had two cases pending before the court: Wells v. Anderson, Case No. 20-cv-1107, which he'd filed in July 2020, and Wells v. Heasthaven, Case No. 20-cv-1510, which he'd filed in September 2020. In both cases, he had asked to proceed without prepaying the filing fee and had submitted versions of his trust account statement.

About two weeks after he filed the complaint in this case, the plaintiff filed his first motion to proceed without prepaying the filing fee. Dkt. No. 8. He indicated that he had three young children, had no income or assets, that he had been indigent since June 29, 2020 and that he'd received his only deposit into his trust account—$46.04—on October 5, 2020. Id. Along with the motion, the plaintiff filed a copy of his trust account statement covering the period July 7, 2020 through October 14, 2020.[1] Dkt. No. 9. As of October 14, 2020, the

---

[1] The law required the plaintiff to file a statement covering the six months prior to the date he filed the complaint, so the statement should have covered April

account showed a balance of $31.50; as the plaintiff had indicated in his application, he'd had a negative balance until October 5, 2020, when he received a deposit of $46.05. Id.

Two weeks later, the plaintiff filed another motion for leave to proceed without prepaying the filing fee. Dkt. No. 11. In the top, right-hand corner of this motion, he put the case numbers of all three of his pending cases. Id. In this motion, the plaintiff asserted that he'd submitted his inmate trust account to the court eight times since August 2020. Id. at 1. He complained that on five occasions, his trust account at the jail had been charged a $0.25 fee for having the trust account statement printed. Id.

On November 9, 2020, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $3.07. Dkt. No. 12. The same day, the court received from the plaintiff another motion to proceed without prepaying the filing fee. Dkt. No. 13. Again, the plaintiff listed the case numbers for all three of his pending cases. Id. at 1. He stated that his trust account continued to be charged $0.25 for printing out the trust account statement, even though he indicated he had sent the account statement in with each of his three complaint packages. Id. He stated that he remained indigent and asked the court to allow him to proceed without prepaying the full filing fee. Id.

---

through September 2020. But in a complaint he filed in one of his other lawsuits before this court, the plaintiff stated that he arrived at the Racine County Jail on June 29, 2020. Wells v. Anderson, Case No. 20-cv-1107, Dkt. No. 1 at 1. It appears that the trust account statement covered the time from the date the plaintiff arrived at the jail until about two weeks after he filed this lawsuit.

Ten days later, the court received a fourth motion from the plaintiff, again listing the case numbers for all three cases. Dkt. No. 15. This motion stated that because of poverty, the plaintiff was unable to pay the cost of all three cases "or initial fee!" Id. at 1. He stated that he had been incarcerated since June 29, 2020, that he was indigent and unemployed and had only himself to depend on—no family support, no public assistance and no way to work because he was disabled. Id. He said he had no assets, had not received a stimulus check and was supporting his five-year-old daughter. Id. He stated that he could not pay the initial partial filing fee. Id. He stated that his trust account balance was only $20, and that he desperately needed to buy personal hygiene items like soap, shampoo, a toothbrush and toothpaste. Id. at 2.

A day later, the court received a fifth motion from the plaintiff. Dkt. No. 17. It was identical to the motion the court had received the day before.

On December 21, 2020, the court received from the plaintiff the $3.07 initial partial filing fee.

The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The PLRA, however, does not allow the court to waive the $350 filing fee. It says that an incarcerated plaintiff who asks to proceed without prepaying the filing fee is nonetheless "required to pay the full amount of the filing fee." 28 U.S.C. §1915(b). While the court waived the initial partial filing fee in the first two of the plaintiff's cases, and while it has granted his motion to proceed without *pre*paying the filing fee in this case, he still owes a $350 filing fee in each of the first two cases, and $346.93 in this case—a total

of $1,046.93. He must pay the $346.93 balance for this case over time as he is able.

## II.      Screening the Complaint (Dkt. No. 1)

### A.      Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

5

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

On August 5, 2021, the court received a document from the plaintiff titled "Amended Complaint/updated address." Dkt. No. 27. An amended complaint takes the place of the original complaint; it is as if the original complaint never was filed. See, e.g., Flannery v. Recording Indus. Ass'n of Am., 354 F.3d 623, 638 n.1 (7th Cir. 2004) (citing Fuhrer v. Fuhrer, 292 F.2d 140, 144 (7th Cir. 1961)) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void.") But the body of the "amended complaint" reveals that the plaintiff did not intend that document to "amend"—or take the place of—his complaint. The document is a letter from the plaintiff, expressing frustration about the length of time it has taken the court to screen his cases, along with a change-of-address notice. The court will instruct the clerk's office to treat the document as a change-of-address notice and the court will not consider the document an "amended

6

complaint" that would take the place of the complaint the plaintiff filed last October.

The plaintiff named as defendants Correctional Officer Koski and Sergeants Hestheaven and Morris, employees of the Racine County Jail. Dkt. No. 1 at 1–2. He alleged that on the afternoon of September 6, 2020, while he was in segregation, another incarcerated person "flooded his cell with toilet water 'Toxic Sewage' water," causing the plaintiff's cell, the day room "and all the other cells to be completely covered in nasty 'Toxic Sewage' water." Id. at 4. The plaintiff said that his cell, the day room and the other cells were "completely covered with water from another inmate toilet which consist of 'urine,' 'Feices' [sic] and 'spit' for (9 hours) straight." Id. He alleged that from 3:45 p.m. until midnight, he and the other incarcerated people were stuck in their cells with the floor completely covered with water containing these substances, "ingesting, inhailing [sic], and standing in the 'Toxic Sewage' water." Id.

The plaintiff alleged that Officer Koski was working in the plaintiff's segregation pod at the time of the flooding. Id. The plaintiff asserted that despite him and all the other incarcerated persons "continually pressing [their] emergency buttons, yelling, shaking [their] bars," Koski "ignored, refused, delayed" the plaintiff's medical emergency button for nine hours. Id. at 4-5. The plaintiff alleged that Sergeants Hestheaven and Morris also ignored the emergency buttons being pushed by the plaintiff and the other incarcerated persons, and that they refused for nine hours to clean up the sewage. Id. at 5.

7

The plaintiff explained that he is diabetic, and he alleged that because of inhaling and ingesting the sewage water for nine hours, his immune system is "jacked up;" he said that he could not eat, he vomited all his meals, he felt nauseous, he got headaches and became lightheaded and dizzy, he could not swallow, his lungs hurt, his eyes were swollen and red and he smelled sewage water throughout the day. Id.

The plaintiff asserted that he filed numerous complaints about the incident and how it made him feel, but that he received no response. Id. He stated that he was enduring severe pain and suffering and needed medical attention immediately. Id. He said that he was in imminent bodily danger and that he feared for his life daily. Id.

The complaint does not state what relief the plaintiff seeks. But in the first of his motions asking the court to appoint him a lawyer (filed a little over two weeks after he filed the complaint in the Northern District of Illinois), he attached three pages of a complaint form that reiterated the allegations in the complaint and included a request for compensatory, nominal and punitive damages, "Injunction Relief," declaratory relief and "Perspective Relief." Dkt. No. 10 at 4.

C.    Analysis

1.    *The Plaintiff's Location*

The plaintiff alleges that he suffered harm while he was at the Racine County Jail. He appears to have mailed the complaint in this case around September 28, 2020; the return address on the envelope is the address of the

Racine County Jail, so it appears he was still there when he mailed the complaint. See Dkt. No. 1 at 6. Although the judge in the Northern District of Illinois transferred the case to this court only three days after that court received it, this court did not promptly screen the case. The result is that the plaintiff has moved several times since the date on which he filed the complaint.

On March 8, 2021, the court received from the plaintiff a letter explaining that his new address was the Stateville Correctional Center in Joliet, Illinois. Dkt. No. 23. On May 3, 2021, the court received another change-of-address notice from the plaintiff, indicating that his new address was 600 Linwood Road, P.O. Box 1327, Galesburg, Illinois. Dkt. No. 25. (The Hill Correctional Center is located at 600 Linwood Road in Galesburg, Illinois. https://www2.illinois.gov/idoc/facilities/Pages/hillcorrectionalcenter.aspx.) On May 10, 2021, the court received another letter, stating that the plaintiff had been residing at 11001 S. Wentworth Avenue in Chicago since May 8, 2021. Dkt. No. 226. (This is the address of the Cornerstone Recovering Community, a drug rehab facility. https://www.drug-rehab-headquarters.com/ illinois/facility/cornerstone-recovering-community-chicago-2/.) Finally, on August 5, 2021, the court received another change-of-address notice from the plaintiff. On this one, he put only the case number for this case. In this notice, the plaintiff informed the court that his new address was 126 Ogden Street, Belvidere, IL 61008. Dkt. Nos. 27-28.

2.    *The Plaintiff's Legal Claims*

The plaintiff alleges that he was exposed to unsanitary, unhealthy and inhumane conditions of confinement at the Racine County Jail on September 6, 2020. To state a claim for unconstitutional conditions of confinement, a plaintiff must allege that a defendant or defendants subjected him to an excessive risk to his health or safety. Quinn v. Wexford Health Sources, Inc., ___ F.4th ___, 2021 WL 3485509, at *6 (7th Cir. Aug. 9, 2021) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The plaintiff must show that the conditions of his confinement were objectively unreasonable; that is, he must show that the conditions were not "'rationally related to a legitimate non-punitive governmental purpose'" or that they were "'excessive in relation to that purpose.'" Hardeman v. Curran, 933 F.3d 816, 822 (7th Cir. 2019) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)). A pretrial detainee who alleges unconstitutional conditions of confinement must "establish that a defendant 'acted purposefully, knowingly, or perhaps even recklessly.'" Self v. Bergh, 835 F. App'x 873, 875 (7th Cir. 2020) (quoting Miranda, 900 F.3d at 353). The court must "focus on the totality of facts and circumstances" that the defendants faced and "gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." Williams v. Ortiz, 937 F.3d 936, 942 (7th Cir. 2019).

The plaintiff alleges that he was forced to remain in a cell flooded with human waste for nine hours. He does not allege that the defendants caused the flooding—the plaintiff alleges that it was another incarcerated person who did

10

that. The plaintiff asserts, however, that he and the other incarcerated persons pushed their emergency buttons, yelled and shook their bars, trying to get someone to address the issue, but that all three defendants ignored them and refused to help. While "the Constitution does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), nine hours in a cell flooded with human waste poses a risk to health and safety. The plaintiff alleged that being left in the contaminated cell for that length of time caused him to suffer multiple health issues. And he alleged that the defendants' actions were not objectively reasonable—they allegedly ignored multiple incarcerated persons pushing their emergency buttons at the same time and yelling for hours. Construing these allegations in the plaintiff's favor at the screening stage, the court concludes that the plaintiff has stated a Fourteenth Amendment claim that the defendants subjected him to unconstitutional conditions of confinement. See Hodges v. Kenosha Cty. Jail, No. 20-CV-18-PP, 2020 WL 5775016, at *4 (E.D. Wis. Sept. 28, 2020) (noting that pretrial detainee who had to sleep in flooded cell might state a claim under the Fourteenth Amendment if he alleged that he suffered harm, including "illness from the water"). The court will permit the plaintiff to proceed against Hestheaven, Morris and Koski on a Fourteenth Amendment claim of unconstitutional conditions of confinement.

The court will not permit the plaintiff to proceed on a claim about his unanswered grievances. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected

by the Due Process Clause . . . ." <u>Ownes v. Hinsley</u>, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). The plaintiff did not have a constitutional right to have someone respond to his many grievances.

Nor will the court allow the plaintiff to proceed in this case on any other claims against any other defendants. As he did in Case No. 20-cv-1107 and Case No. 20-cv-1510, instead of putting all his allegations in the complaint he filed in October 2020, the plaintiff subsequently filed several documents alleging different claims against different defendants, resulting in a "piecemeal" approach that appeared to anticipate that the court would read all the different documents and allow him to proceed in a single case on every allegation against every defendant in every document. This problem exists in all of tghe plaintiff's cases because the plaintiff has filed some documents in all three of his pending cases. Not quite three weeks after he filed the complaint in this case, the plaintiff filed a motion asking the court to appoint him a lawyer. Dkt. No. 10. Actually, the *first page* of the document asked the court to appoint him a lawyer. <u>Id.</u> at 1. The last three pages appear to be a portion of this court's form complaint (the first page is missing), in which the plaintiff reiterates the allegations he made in the original complaint in this case—that the three defendants he has named in this case left him for hours in a cell flooded with water and human waste. <u>Id.</u> at 2-4. The plaintiff filed this same document in Case No. 20-cv-1107 and Case No. 20-cv-1510.

Not quite two months after he filed the complaint in this case, the plaintiff filed two affidavits. Dkt. Nos. 18, 19. These affidavits allege additional

12

facts about events that took place after the plaintiff filed the complaint in Case No. 20-cv-1107. For example, in one affidavit the plaintiff alleges that C.O. Noonan—who is *not* a defendant in any of the three pending cases—knowingly exposed him to the COVID-19 virus in September 2020. Dkt. No. 18 at 1. In the other, he alleges that named and unnamed officers—again, officers who are not defendants in any of the three pending cases—retaliated against him by opening his mail and taking other actions. Dkt. No. 19. In the top, right-hand corner of these affidavits, the plaintiff listed the case numbers for all three of his pending cases, so the clerk's office filed the affidavits in all three cases, even though they named defendants and described claims that he had not made in *any* of the cases. He also filed an affidavit in all three cases, dated January 8, 2021, reiterating the claims he made in Case Nos. 20-cv-1107 and 20-cv-1510, but adding details. Dkt. No. 22 at 2.

As the court advised the plaintiff in its order in Case No. 20-cv-1107, the plaintiff must not list all three of his pending case numbers on every document he files. Before he files a document, he must decide which case it relates to. He must write the case number for that case—and only that case—on that document. When the court receives that document, the clerk's office staff will file the document in the case with that case number. If the plaintiff does not put a case number on a document or if (as he did with the affidavits) he puts all his case numbers on a single document, the court may direct the clerk's office to return the document to the plaintiff unfiled and instruct him to select one case in which to file it.

13

Nor may the plaintiff raise new claims against new defendants simply by filing an "affidavit." If a plaintiff wishes to add claims or defendants to his original complaint, the appropriate way to do so is by filing an "amended" complaint under Federal Rule of Civil Procedure 15. And under this court's Civil Local Rule 15, an amended complaint "must reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference." This means that the plaintiff may not simply write a new claim on a piece of paper and send it to the court with a note that says, "Please add this to all my other claims." To amend a complaint, the plaintiff must start from scratch, reproducing all his original claims and the new claims/defendants he wants to add in the same document.

As the court also explained in the order it issued in Case No. 20-cv-1107, however, a plaintiff may not raise unrelated claims against different defendants in the same case. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). Under Rule 18(a), a plaintiff may bring multiple claims against the same defendant in one lawsuit. So, for example, the plaintiff may sue Defendant 1 for Claims A, B, C and D. Under Rule 20(a)(2), a plaintiff may bring the same claim against multiple defendants in one lawsuit. So, for example, a plaintiff may sue Defendants 1, 2, 3, 4 and 5 in one lawsuit if all of them allegedly committed the violation in Claim A.

> [B]ut Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a] 50-claim, 24-defendant suit produces, but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits

14

or appeals that any prisoner may file without prepayment of the required fees.

George, 507 F.3d at 607.

That means that, depending on which defendants were involved in which alleged violations, the plaintiff may not be able to bring all the claims he alleges in a single case. For example, the plaintiff filed one amendment alleging that C.O. Noonan knowingly exposed him to the COVID-19 virus. That claim involves only C.O. Noonan. C.O. Noonan does not appear to have been involved in any of the other claims the plaintiff has made. That means that if the plaintiff wants to pursue a claim against Noonan for knowingly exposing the plaintiff to the COVID-19 virus, he must file a separate complaint—a new, separate lawsuit with a new $350 filing fee—against Noonan.

Finally, the fragment of a complaint that the plaintiff attached to one of his motions to appoint counsel indicates that he is seeking nominal, punitive and compensatory damages, "Injunction Relief," declaratory relief and "Perspective Relief." Dkt. No. 10 at 4. The plaintiff no longer is incarcerated at the Racine County Jail, where the alleged wrongs occurred. He has not alleged that there is a likelihood he will be incarcerated at the Racine County Jail in the future. His claims for equitable relief are moot. See Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011) (concluding that prayer for injunctive relief was moot because plaintiff was transferred to a different facility and failed to allege "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains"); Bigbee v. Nalley, 482 F. Supp. 2d 1092, 1099 (W.D. Wis. 2007) (citing Robinson v. City

15

of Chi., 868 F.2d 959, 966 n.5 (7th Cir. 1989), and Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996)) (same for claim seeking declaratory relief). The plaintiff is not entitled to injunctive relief under these circumstances, even though he has stated a claim against Hestheaven, Morris and Koski. He may proceed against these defendants only on a claim for monetary damages.

## III. Motions to Appoint Counsel (Dkt. Nos. 10, 14, 16)

The plaintiff filed three requests asking the court to appoint him a lawyer. Dkt. Nos. 10, 14, 16. In the first request, received by the court on October 22, 2020, the plaintiff stated that he had been indigent since June 29, 2020 and that as of October 5, 2020, he had $35.50 in his trust account. Dkt. No. 10 at 1. He stated that he had been writing to "multiple of attorneys across the State of Wisconsin" but that he had not received any responses; he said that he wrote to several law firms asking to be appointed counsel "through the City of Milwaukee, Wisconsin of legal counsel (pro-bono) through the Courts." Id. He asserted that the Racine County Jail had been tampering with his mail. Id. Finally, he stated that he understood that if the court appointed a lawyer but it turned out he was able to pay, the lawyer would share that fact with the court, and he stated that he understood that if he made any false statements in his request for counsel, his case would be dismissed. Id.

The court received the second motion on November 19, 2020. Dkt. No. 14. In that motion, the plaintiff asked the court to appoint him a lawyer "that works with your Court and or a partner of the district court. Id. He stated that he had no assets and that he had the expense of providing for his five-year-old

16

daughter. Id. He reiterated his understandings about the fact that if he later was able to pay a lawyer, the appointed lawyer would have to advise the court of that fact and that he was required to be truthful in requesting counsel or face dismissal of this case. Id. The third motion, received on November 20, 2020, was identical to the second one. Dkt. No. 16.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish et al., 923 F.3d 486, 490 (7th Cir. 2019) (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers'

17

names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second element, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

As the court explained in its order in Case No. 20-cv-1107, the plaintiff has not demonstrated that he made a good-faith effort to find a lawyer on his own. He has not provided the court with the names of any of the lawyers or law firms he contacted or explained when he did so. Even if he had provided the court with that information, the court would not appoint a lawyer to represent him at this point in the case. As the court has explained, it is allowing the plaintiff to proceed on a Fourteenth Amendment conditions-of-confinement

18

claim against defendants Hestheaven, Morris and Koski. The next step in the process will be for the court to serve the complaint on the defendants, and for the defendants to answer or otherwise respond. After that, the court will issue a schedule for the parties to exchange information about the plaintiff's allegations. The plaintiff should be able to ask the defendants—through their lawyers—for the information that the plaintiff needs. If, later, the plaintiff feels that the procedures have become too complicated for him to handle on his own, he may renew his request for the court to appoint him a lawyer.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 8.

The court **DENIES AS MOOT** the plaintiff's four subsequent motions to proceed without prepaying the filing fee. Dkt. Nos. 11, 13, 15 and 17.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's requests for the court to appoint him counsel. Dkt. Nos. 10, 14 and 16.

The court **ORDERS** the Clerk of Court to change the docket entry for Dkt. No. 27 from an "amended complaint" to a change-of-address notice. Dkt. No. 27.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on Correctional Officer Koski and Sergeants Hestheaven and Morris of the Racine County Jail under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the

19

court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Koski, Hestheaven and Morris to file a responsive pleading to the complaint.

The court **ORDERS** that the plaintiff must pay the $346.93 balance of the filing fee over time as he is able.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that the plaintiff must send an original copy of every document he wishes to file to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

20

clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 13th day of September, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**